THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

MELINDA HAAG
United States Attorney

ILA C. DEISS (New York Bar 3052909)
Assistant U.S. Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7124
Facsimile: (415) 436-7169
ila.deiss@usdoj.gov

T. CHRISTIAN HERREN, JR.
TIMOTHY MELLETT
BRUCE I. GEAR (District of Columbia Bar 463388)
OLIMPIA E. MICHEL (New York Bar 4358321)
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Room NWB-7254

1. Washington, D.C. 20530
2. Telephone: (202) 353-0419
3. Facsimile: (202) 307-3961
4. bruce.gear@usdoj.gov
5. olimpia.michel@usdoj.gov
6. 
7. Counsel for Plaintiff
8. United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. C-11-3262 EMC-MMS-RS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SUPPLEMENTAL BRIEFING |
| ALAMEDA COUNTY, CALIFORNIA; | ) | |
| DAVE MACDONALD, ALAMEDA COUNTY | ) | |
| REGISTRAR OF VOTERS, in his official | ) | |
| capacity; and the ALAMEDA COUNTY BOARD | ) | |
| OF SUPERVISORS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

    The United States files this supplemental briefing in response to the Court's September 21, 2011 order requesting additional information from the parties concerning the consent decree pending approval by the Court. We have conferred with the Defendants' Counsel, and Defendants join the United States in this response. We also attach a revised proposed consent decree, approved and signed by the parties, that addresses the Court's inquiries with respect to specific language in the decree.

**SUPPLEMENTAL BRIEFING**

The specific questions posed by the Court in its order, and the parties' responses are set out below.

*(1) In paragraph 8, the consent decree provides that "translated materials must include all of the relevant information provided in the English language version." The use of the phrase "all of the relevant information" is arguably vague. Can the decree provide greater specificity?*

The parties included "all of the relevant information" language in paragraph 8 to ensure that no essential voting-related information is lost in the translation process. The phrase sought to recognize that when translating certain English-language terms that do not have a Spanish-language or Chinese-language equivalent, Defendants need to select a translation that most closely captures the meaning of the English-language information. This principle applies to all translations and was noted in paragraph 8 for emphasis.

In response to the court's inquiry, we have amended paragraph 8 by removing the following phrase in the second sentence: "the translated materials must include all of the relevant information provided in the English-language version." See Attachment 1, revised proposed Consent Decree, Judgment, and Order, U.S. v. Alameda County, at ¶ 8. We have added the following language to paragraph 4, which pertains to the general procedures and standards for translating all materials: "The translated materials must include effective translations that most accurately convey the meaning of the original English-language information." See id. at ¶ 4.

*(2) In paragraph 10, the consent decree provides that the County shall affirmatively contact Hispanic and Chinese organizations in the County and organizations that serve Spanish-speaking or Chinese-speaking citizens to inform them of the decree and to solicit*

**SUPPLEMENTAL BRIEFING**

*their assistance in contacting limited-English proficient voters. It is not clear how the County is supposed to identify these groups.*

The parties believe that County election officials, with the assistance of the County's Spanish-language and Chinese-language election program coordinators, are in the best position to identify the relevant organizations within their community. These individuals possess the local knowledge and community ties within Alameda County's minority language communities, and are currently working with a number of organizations offering services to persons of Hispanic and Chinese ancestry. In addition, the consent decree would require the formation of an Advisory Group of interested community members and groups, see paragraphs 25-27, to assist and inform the Spanish-language and Chinese-language election programs. After selecting the appropriate organizations pursuant to paragraph 10, the County will consult the Advisory Group members to update and review the list of organizations.

We have added the following language to paragraph 10 to provide more details regarding the County's outreach efforts:

> "The County shall work with its Spanish-language and Chinese-language election program coordinators (see paragraph 24, *infra*, delineating the coordinators' duties) to identify Hispanic and Chinese organizations in the County as well as organizations that serve Spanish-speaking or Chinese-speaking citizens. After identifying these organizations, the County shall consult with its Advisory Group members (see paragraphs 25-27, *infra*, establishing the guidelines for the Advisory Group) to update and review the organizations. The County shall affirmatively contact the organizations by telephone and in writing to inform these groups of this Decree and solicit their assistance in contacting limited-English proficient voters."

**SUPPLEMENTAL BRIEFING**

3

See Attachment 1, revised proposed Consent Decree, Judgment, and Order, U.S. v. Alameda County, at ¶ 10.

> *(3) In paragraph 14(d) of the consent decree, there is a special provision that provides relief for the County where persons identified as of Hispanic origin at the block level group are less than three percent of the population. There is no comparable provision with respect to persons identified as Chinese in origin. What is the reasoning for the differential treatment? In addition, it is not clear what effect paragraph 14(d) will have on the number of bilingual election officials at the precinct level.*

Paragraph 14(d) of the consent decree addresses the Registrar of Voters' concerns that reliance on Spanish-surname analysis may lead, in some circumstances, to inaccurate targeting for Spanish-language assistance needs. Alameda County has a significant Filipino community, and the Filipino and Hispanic communities share a number of surnames originating from Spain. The Registrar of Voters believed this overlap would make it difficult to differentiate between the two groups when conducting a Spanish-surname analysis.

Based on an analysis of Census data, there appears to be little geographic overlap between the Hispanic and Filipino communities in Alameda County, and thus the surname analysis generally will provide an effective method of targeting the assignment of bilingual election officials to assist Spanish-speaking voters. To address the County's concerns, however, Paragraph 14(d) provides a limited exception to the requirements of paragraphs 14(a)-(c). In circumstances where the Census data for a particular geographic area shows that less than 3 percent of the population is of Hispanic origin, the Spanish-language bilingual official targets in Paragraph 14 would not apply in the precincts in that geographic area. Based on the parties' review of the relevant Census data for Alameda County to date, the exception in Paragraph 14(d)

**SUPPLEMENTAL BRIEFING**

4

is not expected to substantially impact either the number of precincts covered by Paragraph 14(a) or the number of bilingual election officials required in a given precinct.

No similar concerns were raised regarding use of the surname method for targeting for Chinese-language assistance; thus, the parties did not include a parallel provision for persons of Chinese origin.

> *(4) Pursuant to paragraphs 14 and 15 of the consent decree, the numbers to trigger the need for bilingual election officials differs for Spanish and Chinese. Again, is there a basis for the differential treatment?*

The formulas reflected in paragraphs 14 and 15 take into account the differences in the rates of the Hispanic Citizen Voting Age Population ("HCVAP") and the Chinese Citizen Voting Age Population ("CCVAP"), respectively, that is limited English proficient[1] ("LEP"). Under the 2000 Census, the HCVAP that is LEP in Alameda County is approximately 20.7 percent. In contrast, the CCVAP that is LEP in Alameda County is 45.5 percent.[2] Accordingly, because we would expect LEP levels among eligible Chinese-surnamed registrants to be significantly higher than that of Spanish-surnamed registrants, the number of Chinese-surnamed registrants that would trigger the assignment of bilingual election officials is lower than the number that would trigger the assignment of Spanish-speaking bilingual election officials.

The formulas incorporated in paragraphs 14 and 15 provide a straightforward and effective method to target voters needing language assistance. Federal courts have approved the

---

[1] The Attorney General's Guidelines define LEP as "unable to speak or understand English adequately enough to participate in the electoral process." See The Attorney General's Guidelines on Implementation of the Provisions of the Voting Rights Act Regarding Language Minority Groups, 28 C.F.R. § 55.6(b) (2011).

[2] These differences are also reflected in the nationwide LEP rates for these language minority groups. The 2000 Census (the most recent LEP data available) showed that the nation-wide HCVAP LEP rate was 27 percent, compared to a rate of 40 percent for CCVAP.

**SUPPLEMENTAL BRIEFING**

5

use of these and similar formulas for determining Spanish-language and Chinese-language assistance in settlements throughout the country. See, e.g., Attachment 2(a-d), Consent Decree, Judgment and Order, U.S. v. San Benito County, Civ. Action No. CO402056 (N.D. Cal. 2004); Consent Decree, Judgment and Order, U.S. v. Fort Bend County, Civ. Action No. 4:09-cv-1058 (S.D. Tex. 2009); U.S. v. Cochise County, Case No. CV 06-304, Consent Decree, Order, and Judgment (D. Ariz. Oct. 12, 2006); Order, Memorandum of Agreement, & Settlement, U.S. v. City of Boston, Case No. 05-11598-WGY ¶ 9 (D. Mass. Oct. 18, 2005).

*(5)    In paragraph 34, the consent decree provides that the County has an obligation to issue public notice and solicit public comment if it wishes to move for termination of the decree. The method by which the County should issue notice and solicit comment is not clear.*

In order to provide more specific procedures for meeting the County's public notice and public comment solicitation requirements if it moves to terminate the consent decree, the parties added the following language to paragraph 34:

> "The County shall publish the report on its election information website. The Advisory Group shall also disseminate the report to interested community members. Further, the County shall publish a notice informing the public of its motion to terminate the consent decree in the newspapers or other media it relies upon to publicize election-related information to the Spanish-speaking and Chinese-speaking communities pursuant to paragraph 9 of the consent decree. The notice shall be provided in Spanish and in Chinese as well as in English, and shall advise how persons can submit their comments and provide the contact information for the appropriate election officials, including Spanish-speaking and

**SUPPLEMENTAL BRIEFING**

      Chinese-speaking bilingual officials, who can answer questions relating to the notice."

See Attachment 1, revised proposed Consent Decree, Judgment, and Order, U.S. v. Alameda County, at ¶ 34.

  *(6) Title 28 U.S.C. § 2284 provides that, "[i]f the action is against a State, or officer or agency thereof, at least five days' notice of hearing of the action shall be given by registered or certified mail to the Governor and attorney general of the State." The parties should address whether a county is considered an arm of the state or an agency thereof for purposes of this section.*

  The notice requirement in 28 U.S.C. § 2284(b)(2) does not apply in this case, as this is not an action against the State of California, or an officer or agency of the State. Alameda County is the entity designated under Section 203 with responsibility for complying with the statute. See 67 Fed. Reg. 48,871 (July 26, 2002); 57 Fed. Reg. 43,213 (Sept. 18, 1992). Thus, as in other Section 203 cases, the instant action is against the County and its officials responsible for conducting elections.

  Pursuant to Section 203 of the Voting Rights Act, the Director of the Census Bureau is required to issue determinations, based on census data, on whether States or political subdivisions meet the applicable demographic triggers for coverage under Section 203. 42 U.S.C. § 1973aa-1a(b). The Census Bureau determined that Alameda County, as a political subdivision, must meet the requirements of Section 203 with regard to the Spanish and Chinese languages. See 67 Fed. Reg. 48,871 (July 26, 2002); 57 Fed. Reg. 43,213 (Sept. 18, 1992).

**SUPPLEMENTAL BRIEFING**

Date: 12 day of Oct., 2011

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

MELINDA HAAG
United States Attorney

*/s/ Ila C. Deiss*

ILA C. DEISS
Assistant U.S. Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7124
Facsimile: (415) 436-7169
ila.deiss@usdoj.gov

*/s/ Olimpia Michel*

T. CHRISTIAN HERREN, JR
TIMOTHY F. MELLETT
BRUCE I. GEAR
OLIMPIA E. MICHEL
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue NW
Room NWB-7254
Washington, D.C. 20530
Telephone: (202) 353-0419
Facsimile: (202) 307-3961
bruce.gear@usdoj.gov
olimpia.michel@usdoj.gov

SUPPLEMENTAL BRIEFING

8